402 A.2d 595.

STATE *vs.* SAMUEL I. HECTOR.

JUNE 21, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.  This is an appeal from a judgment of conviction entered after a jury trial on a one-count indictment charging the defendant with larceny. General Laws 1956 (1969 Reenactment) §§11-41-1, -5. In his appeal the defendant challenges the denial by the trial justice of his motion for a new trial. The sole issue is whether there was sufficient evidence to show that the defendant intended to steal $7,200 mistakenly given to him by a credit union teller who misread a check the defendant presented for cashing.

At trial, defendant did not present any evidence. The evidence presented by the state was as follows. At about 3:30 pm, on the afternoon of March 27, 1974, defendant, Samuel I. Hector (Hector), walked up to a teller's window at the Narragansett Electric Employees' Credit Union. Hector was an employee of the Electric Company and had regularly cashed his payroll checks at the Credit Union during the preceding years. On this occasion, Hector sought to cash his federal income-tax rebate check of $851.69. He was waited on by Florence O'Donnell (O'Donnell), the office manager, who was working as a teller because of a shortage of help. She testified that when Hector, who was well known to her, handed her the check, she misread the amount payable as $8,051.69. She said that she commented to Hector at the time, "Well, that's a large check. I'll have to get some large

bills from the back room." She asked Hector to step into an enclosed section of the lobby where a teller window was available for private transactions. She then acquired five packages of bills from the vault. Each packet consisted of a stack of bills surrounded by a band. Three of the packets consisted of $20 bills banded by purple bands labeled "two thousand dollars," and two packets consisted of $50 bills banded by yellow bands labeled "one thousand dollars." O'Donnell testified that because the Credit Union had just received the packets from the bank the amounts had not yet been verified. Therefore, she said that she took the unusual step of having Hector count two packets of $20 bills containing a total of $4,000. O'Donnell said that she saw Hector counting out, bill by bill, the contents of each packet. She testified that she asked Hector, "Aren't you afraid of carrying so much money around with you?" To which he replied, "Oh, no. I have had large sums before." When the counting was completed, she told the court that she and Hector put the bands back around the bills. She then placed the five packets containing $8,000 in a large manila envelope. She took an additional $51.69 from her teller drawer, putting $51 in the manila envelope and handing the 69 cents to Hector. She testified that after she sealed the envelope with a postage meter sealer, she handed Hector the envelope and he left the Credit Union Office.

At the end of the day, O'Donnell and the other teller balanced their accounts and discovered a $7,200 shortage. O'Donnell stated that when she reviewed her transactions for the day, she immediately realized her error and reported it to the treasurer.

Merle Gorman, the Credit Union treasurer, testified that he had known defendant as a customer for over five years. He stated that, although he had not actually seen Hector's check on the day in question, he did remember seeing Hector in the private counting room and had observed a large pile of bills on the teller's window ledge between Hector and O'Donnell. He said that he commented to Hector at the time, "I hope that's all coming in and not going out."

After O'Donnell reported the shortage to him, Gorman stated that he went to see Hector at the Electric Company to recover the overpayment. When questioned about the overpayment, however, Hector denied receiving any extra money. When Gorman asked him to return the envelope intact, Hector responded that he had given it to his brother to buy a car with and had not looked inside the envelope. At Gorman's urging, Hector left work to find his brother and inspect the envelope. An hour or so later, Hector called the Credit Union and stated that he had seen his brother and that there was only $800 in the envelope.

In this appeal, defendant argues that the trial justice erred in ruling on his motion for a new trial. He contends that based on the evidence adduced at trial, it was unreasonable for the justice to infer that defendant had the criminal intent necessary for larceny.

It is well known that one who knowingly receives and carries away money given to him by mistake, having formed the intent to appropriate that money at the time he received it, is guilty of larceny. *United States* v. *Rogers*, 289 F.2d 433, 438-39 (4th Cir. 1961); *Sapp* v. *State*, 26 So. 2d 646, 648-49 (Fla. 1946). *See generally* LaFave & Scott, *Criminal Law* 629 (1972). In the case at bar it was incumbent on the state to adduce evidence establishing that defendant was overpaid, that defendant was aware that he was being overpaid, and that he nevertheless took the money with the intent of keeping it.

We think there was sufficient evidence on all of these points. In his ruling on the motion for a new trial, the justice indicated that he believed the testimony of O'Donnell and of Gorman. O'Donnell testified in great detail concerning the delivery of an extra $7,200 to defendant. She also testified that defendant personally counted $4,000, bill by bill, and that, once counted, the total pile of money remained in defendant's view until placed in an envelope, sealed, and then carried away by defendant.

The defendant takes the position that because his activities were, on their face, innocuous, and because he obviously had no prior plan to steal the money, it was unreasonable to infer that he formed the intent to steal during the brief moments when he received the overpayment. We disagree. State of mind, absent an admission or confession, must necessarily be proved by circumstantial evidence. From the evidence in the instant case, it was reasonable to infer that the defendant knew an extra $7,200 was being given to him. Likewise, it was reasonable to infer by his silent acceptance of the overpayment and by his act of walking out of the Credit Union that he intended to keep the money at the moment he received it.

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.

*Dennis J. Roberts, II*, Attorney General, *Joel D. Landry*, Assistant Attorney General, for plaintiff.

*Slepkow, Slepkow & Rappoport, Inc., Milton S. Slepkow*, for defendant.